SIGNED THIS: June 16, 2017

_____
**Mary P. Gorman
United States Chief Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re | ) |
| | ) Case No. 16-71878 |
| ERIK S. LUCAS, | ) |
| | ) Chapter 7 |
| Debtor. | ) |

# O P I N I O N

Before the Court is the Debtor's Motion to Convert from Chapter 7 to Chapter 13. The Chapter 7 Trustee objected, asserting that the Debtor does not have an absolute right to convert and that conversion is not in the best interest of the creditors and would allow the Debtor to avoid the consequences of his conduct that might warrant the denial of his Chapter 7 discharge. After an evidentiary hearing, consideration of the arguments and authority submitted by counsel, and a review of the record, this Court finds that the Debtor has not acted in good faith and therefore is not eligible to be a debtor under Chapter 13. The

Motion to Convert will be denied.

## I. Factual and Procedural Background

Erik S. Lucas ("Debtor") signed and filed his voluntary Chapter 7 Petition ("Petition") on November 29, 2016. On his Petition, the Debtor indicated that he was not a sole proprietor of any business. On his Schedule A/B: Property, he stated that he had no cash on hand, a balance of $0 in a CEFCU checking account, and only $150 in a checking account with Farmer's Bank. Among his other assets, the Debtor listed several vehicles. And he further said that he did not have any legal or equitable interest in any crops—either growing or harvested. On his Schedule I: Your Income, the Debtor indicated that he was employed as a maintenance person for Calihan Pork, and that his non-filing spouse was employed in the healthcare industry. Aside from their wages earned in those positions, no other income was listed by the Debtor. On his Statement of Financial Affairs ("SOFA"), the Debtor stated that he did have income from employment or from operating a business in the current year and over the previous two years, but he did not disclose the amount of that income or whether it was from wages or the operation of a business. The Debtor also said that he did not pay any creditor a total of $600 or more during the 90 days preceding the petition date. The Debtor did not list any payments to or for the benefit of any insiders within one year before filing for bankruptcy.

On February 21, 2017, following a February 6, 2017 meeting of creditors, the Debtor filed Amended Schedules A/B and C, as well as an Amended SOFA. On his Amended Schedule A/B, the Debtor disclosed for the first time an interest in

a 1999 Honda Civic, which he described as purchased by himself but titled to his son, and a utility trailer, which he indicated was sold to his brother over a year before. In addition, the Debtor disclosed having $4329 in the Farmer's Bank checking account, rather than the $150 listed on his original schedules, and listed the CEFCU checking account as having an unknown balance. On his Amended SOFA, the Debtor disclosed gross income of $79,636.02 from both wages and the operation of a business in 2016 before his Petition was filed. For the 2015 and 2014 calendar years, he listed gross income from wages and the operation of a business in the amounts of $59,166 and $97,070, respectively. The Debtor also disclosed for the first time payments totaling $6300 to Midwest Technical Institute and $1200 to Rodney Bowman, each made within the 90 days preceding the filing of his Petition.

On March 6, 2017, the Debtor filed a motion to dismiss his Chapter 7 case. That motion was summarily denied due to the Debtor's failure to state any cause for dismissal. On April 12, 2017, the Debtor filed his Motion to Convert Chapter 7 to Chapter 13 ("Motion to Convert"), to which the Chapter 7 Trustee ("Trustee") objected. An evidentiary hearing on the Debtor's Motion to Convert was held on May 23, 2017.

The sole witness at the hearing was the Debtor. Much of his testimony was, however, not helpful to his case. On direct examination, the Debtor's attorney led him through virtually every question, asking the Debtor to agree with the conclusions and statements presented by his attorney.[1] Notwithstanding the

---

[1] At the outset, the Debtor's attorney asked for some leeway in his questioning for the sake of brevity. The Court informed him that it was amenable to his request subject to any objections that might be raised by the Trustee or United States Trustee. An

leading nature of the his attorney's questions, the Debtor did testify to some foundational matters. The Debtor testified that he initially met with his attorney to discuss the possibility of seeking bankruptcy relief in late August 2016. He estimated that he met with his attorney two more times before his Petition was filed in late November. The Debtor also stated that he was not working throughout that time because he was recovering from back surgery.

The Debtor also made several admissions. The Debtor admitted that, in addition to his employment with Calihan Pork, he was engaged in a farming business and had received subsidy payments from a federal government program in the fall of 2016 before filing his Petition. He also admitted that, prior to filing, he had taken out a loan from the State Bank of Emden to subsidize his farming operation. The Debtor admitted that he leased farm land from a relative to whom he had paid $4750 within the 90 days prior to filing his Petition. He acknowledged that he had received $14,458.21 in crop income from the 2016 harvest and that such amount was in his checking account as recently as 11 days before his Petition was filed. And the Debtor admitted that he paid $6300 to Midwest Technical Institute for his son's school tuition two months prior to filing for bankruptcy. Aside from the pre-petition payment to Midwest Technical Institute, which the Debtor included on his Amended SOFA, none of these items or transactions were disclosed on his original or amended filings.

---

objection was raised, however, when counsel attempted to provide an explanation for undisclosed funds in a bank account and asked the Debtor to agree with him. The objection was sustained and the Court admonished the Debtor's attorney that it would be better for the Debtor if he was just asked to explain what happened. Another objection was raised when the Debtor's attorney tried a second time to have the Debtor agree with the attorney's explanation for the undisclosed bank account balance. When that objection was sustained, the Debtor's attorney just sat down and ended his examination.

The Debtor stated that he had no intent to deceive the Trustee or defraud the Court or his creditors. Rather, the Debtor attempted to explain the omissions either by stating that he did not know that he was doing anything wrong or did not understand the questions asked on his bankruptcy documents. He also stated that he had disclosed everything to his attorney and was relying on his attorney to make sure everything was complete and accurate. But he also acknowledged that hiring an attorney did not relieve him of his duty to read and review his Petition and schedules for accuracy, which he said he did. And with regard to the omission of the full balance of his checking account, the Debtor explained that the $150 balance listed on his original bankruptcy documents reflected the balance around the time of his first meeting with his attorney, before his crops were harvested and approximately three months prior to filing his Petition. But he also admitted that he was aware that there was more money in his account at the time he filed because he had harvested his crops by then. He justified the omission by stating he still needed to pay for inputs and repay loans from the funds.

At the conclusion of the evidence, the Court heard arguments from the Debtor's attorney and the Trustee. The Debtor's attorney argued that the Debtor was unsophisticated and that his failure to disclose required information was inadvertent. He further stated that he and the Debtor never had an opportunity to "go over the bankruptcy dos and don'ts," arguing that the Debtor's pre-petition conduct merely reflected his efforts to continue conducting his affairs and his desire to help his son. He further argued that the Debtor understood that he would likely need to pay money to the Trustee for the benefit of his creditors and stated that the Debtor was ready and willing to pay the amounts necessary to

fund a Chapter 13 plan. The Trustee, on the other hand, argued that the substance and degree of the Debtor's omissions amounted to nothing less than bad faith, making him ineligible for Chapter 13.

Following the hearing, the matter was taken under advisement and is now ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). Matters involving the administration of an estate or the adjustment of the debtor-creditor relationship are core proceedings. 28 U.S.C. §157(b)(2)(A), (O). The matters here arise directly from the Debtor's bankruptcy itself and from the provisions of the Bankruptcy Code and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

## III. Legal Analysis

Generally, cases commenced under either Chapter 7 or Chapter 13 may be converted to the other. *See* 11 U.S.C. §§706(a), 1307(a), (c). Relevant to the Debtor's request in this case, §706 provides that a debtor may convert a Chapter 7 case to a case under Chapter 13 if the case has not already been converted under another section and if the debtor is eligible for relief under the chapter to which conversion is sought. 11 U.S.C. §706(a), (d). In *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 372 (2007), the Supreme Court noted that there are

at least two possible reasons why a Chapter 7 debtor may not qualify as a debtor under Chapter 13. The first reason is that a debtor fails to meet the debt limits and income requirements of §109(e). *Id.* The second reason "turn[s] on the construction of the word 'cause' in §1307(c)." *Id.* at 372-73. Because a Chapter 13 case may be dismissed or converted to Chapter 7 for cause, a Debtor's pre-petition conduct is relevant to the question of Chapter 13 eligibility. *Id.* at 373-74. Ultimately, the Court held that good faith—or at least a lack of bad faith—is a condition of eligibility for Chapter 13, and that bad faith can prevent conversion of a case to Chapter 13. *Id.* at 373-75.

In *Marrama*, the Court declined to elaborate on the specific type of conduct that constitutes "bad faith" sufficient to warrant denial of a debtor's request to convert to Chapter 13. The Court did say, however, that denial of a request to convert should be limited to extraordinary cases where the debtor's conduct is "atypical" of the class of "honest but unfortunate debtor[s]" that bankruptcy is intended to protect. *Id.* at 374-75. And although §1307(c) does not explicitly identify "bad faith" in the non-exclusive list of causes for dismissal in Chapter 13, it is well established that dismissal for "cause" includes the lack of good faith in filing. *See* 11 U.S.C. §1307(c); *In re Love*, 957 F.2d 1350, 1354 (7th Cir. 1992); *In re Smith*, 848 F.2d 813, 816 n.3 (7th Cir. 1988).

The good-faith test is a factual determination based on the totality of the circumstances of a particular case. *See Love*, 957 F.2d at 1355; *Smith*, 848 F.2d at 817-18. A primary purpose of the inquiry is to "force[] the bankruptcy court to examine whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of [the Chapter] . . . ." *See Love*, 957

F.2d at 1357 (alteration in original) (quoting *Smith*, 848 F.2d at 818) (internal quotation marks omitted). Both objective and subjective inquiries are involved in determining whether a case has been filed in good faith. *Love*, 957 F.2d at 1357. Factors to be considered include the nature and potential nondischargeability of scheduled debts, the timing of the case filing, the circumstances of how particular debts were incurred, the debtor's motive for filing, how the debtor's actions affected creditors, the debtor's treatment of creditors before and after filing, and whether the debtor has been forthcoming with the court and creditors. *See In re Sidebottom*, 430 F.3d 893, 899 (7th Cir. 2005); *Love*, 957 F.2d at 1357.

The outcome of this case hinges upon the last three factors: how the Debtor's actions affected his creditors; the Debtor's treatment of his creditors; and whether the Debtor was forthcoming with his creditors and the Court. The Debtor failed to disclose a number of matters on his Petition and original schedules. The Debtor argues that these omissions were inadvertent, but, because the omissions were so obvious and persistent, his testimony was not credible. Nowhere on the Debtor's Petition, schedules, SOFA, or amendments did the Debtor disclose that he was engaged in a farming business. Having admitted that he reviewed each of these documents before signing them, it is incredible that the Debtor could overlook the fact that the documents included no mention of his being a farmer.[2] The Debtor contends that he disclosed information about his farming venture to

---

[2] The only indication that the Debtor may have been engaged in a business was his disclosure on his Amended SOFA of annual income for the two years preceding bankruptcy, which he marked as being from both wages and the operation of business. On his original SOFA, the Debtor merely checked the box indicating that he had income from employment wages or the operation of a business but neglected to disclose any amounts or indicate whether the income was from wages or the operation of a business.

his attorney and relied on his attorney's judgment in filing his Petition. But he also acknowledges that it was his responsibility to review the filings for accuracy before signing. Likewise, the Debtor failed to disclose the lease he had with his relative, as well as the fact that he paid $4750 to his relative for rent prior to filing, claiming that he did not understand the questions about executory contracts and leases. But the Debtor also never disclosed the existence of the lease or the pre-petition payment to his relative in his amended filings.

The Debtor also received crop income of $14,458.21 from his harvest, which he acknowledged having in his checking account 11 days before filing his Petition. On his original schedules, however, the Debtor disclosed having only $150 in his checking account. He later amended his schedules to reflect a balance of $4329 in the checking account on the date of filing. The Debtor's failure to disclose the $4329 on his original schedules is concerning, especially given the fact that the Debtor admitted he was aware that he had the money in his checking account when he signed and filed his original Petition and schedules. His explanation that he needed to pay for some farm inputs and other loans from the funds does not excuse the omission. Rather, it confirms the fact that he was clearly aware that he had made $10,000 in transfers within the 11 days preceding his bankruptcy filing and had made several other transfers in the 90 days preceding the filing. One of those transfers was a $6300 payment to Midwest Technical Institute for his son's school tuition, first disclosed on his Amended SOFA filed after the first meeting of creditors.

The Debtor's failure to disclose transfers of property to insiders and other creditors, at the very least, had the effect of preferring some creditors over others

and withholding some assets from creditors altogether. The Debtor claims that he did not know he was doing anything wrong, that he understood that he would need to turnover the non-exempt portion of his assets to the Trustee, and that he is now willing to pay whatever amounts may be necessary to fund a Chapter 13 plan. But the Debtor failed to provide any explanation as to why he did not disclose these matters on his original schedules and only disclosed the $4329 in his bank account and the payment to Midwest Technical Institute in subsequent amendments.

Generally, a debtor may rely on the advice of his attorney on legal matters. That reliance, however, must be in good faith. *In re Retz*, 606 F.3d 1189, 1199 (9th Cir. 2010) (citation omitted). But "[t]he advice of counsel is not a defense when the erroneous information should have been evident to the debtor." *Id.* (citing *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 111 (1st Cir. 1987)) (discussing reliance on attorney in the context of denying a debtor's discharge). This Court has previously held that debtors are bound by both the acts and omissions of their attorneys. *In re Bardenshtein*, 2009 WL 722590, at *4 (Bankr. C.D. Ill. Mar. 17, 2009). "A debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath." *Tully*, 818 F.2d at 111.

As to the farming business and income specifically, the omissions cannot be found to have been inadvertent. A substantial portion of the Debtor's income and assets came from his farming business. Yet his Petition, schedules, and SOFA are devoid of any mention of his farming or related transactions. And although the Debtor did amend his schedules to reflect the $4329 in his checking account on

the date of filing, the Debtor admitted that he was aware that he had that much when he signed and filed his original schedules indicating an account balance of only $150. Such errors should have been evident to the Debtor when he read and reviewed his Petition, schedules, and SOFA for accuracy. These problems were only compounded by the fact that they, and several others, were never corrected in later amendments. The Debtor's conduct is not the conduct that is typical of the class of "honest but unfortunate debtor[s]" that bankruptcy is intended to protect. *Marrama*, 549 U.S. at 374-75.

Finally, while not specifically raised by the Trustee, the Court finds the timing of the Debtor's Motion to Convert problematic. Following the first meeting of creditors, the Debtor amended his schedules and SOFA. In an effort to exempt the newly disclosed assets, the Debtor also amended the values of several previously disclosed assets he had claimed as exempt to lower or unknown amounts. When the Trustee filed his objection to the Debtor's claim of exemptions, the Debtor filed his motion to voluntarily dismiss his case. And when that motion was denied for the Debtor's failure to provide any basis for the dismissal, he filed his Motion to Convert. It is apparent from the Debtor's actions that he wanted to protect his farming assets from the reach of the Trustee and his creditors. And although the filing of his Motion to Convert to take advantage of the benefits of certain Code provisions is not, in and of itself, indicative of bad faith, when viewed together with the Debtor's persistent failure to be forthcoming with his creditors and this Court, the timing of the motion weighs against him. *See In re Piccoli*, 2007 WL 2822001, at *7 (E.D. Pa. Sept. 27, 2007).

### IV. Conclusion

The Debtor's failure to disclose material financial information on his Petition, schedules, and SOFA was atypical of the class of honest but unfortunate debtors that the Code seeks to protect. By signing and filing his Petition and schedules, the Debtor made a declaration that he had read and reviewed the same and that they were accurate. The Debtor, however, omitted material information from his original documents. The fact that the Debtor claimed to rely on his attorney's expertise is not a defense to his conduct. Because the Court finds that the Debtor's actions in his Chapter 7 case were lacking in good faith, the Debtor is not eligible for relief under Chapter 13 and his Motion to Convert must be denied.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###